

# Summons

In the matter of __Veolia Environnement North America Operations, Incorporated__
Internal Revenue Service (Division): __Large and Mid-Sized Business__
Industry/Area (name or number): __Retail, Food, Pharmaceutical and Healthcare Group 1178__
Periods: __Tax Periods ended 12/31/2004, 12/31/2005 and 12/31/2006__

## The Commissioner of Internal Revenue

**To:** Veolia Environnement North America Operations, Incorporated
**At:** 700 East Butterfield Road, Suite 201, Lombard, Illinois 60148

You are hereby summoned and required to appear before __John Lee or his designee__ an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

See attached ADDENDUM to the Veolia Environment North America Operations, Inc. SUMMONS – Intangible Property Transfers and BOOT Contracts.

**Do not write in this space**

**Government Exhibit 3**

Business address and telephone number of IRS officer before whom you are to appear:
2001 Butterfield Road, 12th Floor, Downers Grove, Illinois 60515    Phone: 630-493-5089

**Place and time for appearance at** 2001 Butterfield Road, 12th Floor, Downers Grove, Illinois 60515

**IRS**
Department of the Treasury
Internal Revenue Service
www.irs.gov

Form 2039 (Rev. 12-2001)
Catalog Number 21405J

on the __7th__ day of __January__, __2009__ at __1__ o'clock __p.__ m.
Issued under authority of the Internal Revenue Code this __5th__ day of __December__, __2008__.

Signature of issuing officer         Title: Revenue Agent
Signature of approving officer (if applicable)    Title: T/M RFPH:1178

**Original — to be kept by IRS**



# Service of Summons, Notice and Recordkeeper Certificates

(Pursuant to section 7603, Internal Revenue Code)

I certify that I served the summons shown on the front of this form on:

| Date | Time |
|---|---|
| 12/5/2008 | 3:18 p.m. |

**How Summons Was Served**

1. ☑ I certify that I handed a copy of the summons, which contained the attestation required by § 7603, to the person to whom it was directed. Ray Bruckert

2. ☐ I certify that I left a copy of the summons, which contained the attestation required by § 7603, at the last and usual place of abode of the person to whom it was directed. I left the copy with the following person (if any): _____

3. ☐ I certify that I sent a copy of the summons, which contained the attestation required by § 7603, by certified or registered mail to the last known address of the person to whom it was directed, that person being a third-party recordkeeper within the meaning of § 7603(b). I sent the summons to the following address: _____
700 East Butterfield Road, Suite 201, Lombard, Illinois 60148

| Signature | Title |
|---|---|
| Dale R. Look | Revenue Agent |

4. This certificate is made to show compliance with IRC Section 7609. This certificate does not apply to summonses served on any officer or employee of the person to whose liability the summons relates nor to summonses in aid of collection, to determine the identity of a person having a numbered account or similar arrangement, or to determine whether or not records of the business transactions or affairs of an identified person have been made or kept.

I certify that, within 3 days of serving the summons, I gave notice (Part D of Form 2039) to the person named below on the date and in the manner indicated.

Date of giving Notice: _____      Time: _____

Name of Noticee: _____

Address of Noticee (if mailed): _____

**How Notice Was Given**

☐ I gave notice by certified or registered mail to the last known address of the noticee.

☐ I left the notice at the last and usual place of abode of the noticee. I left the copy with the following person (if any).

☐ I gave notice by handing it to the noticee.

☐ In the absence of a last known address of the noticee, I left the notice with the person summoned.

☐ No notice is required.

| Signature | Title |
|---|---|
|  |  |

I certify that the period prescribed for beginning a proceeding to quash this summons has expired and that no such proceeding was instituted or that the noticee consents to the examination.

| Signature | Title |
|---|---|
|  |  |

Form **2039** (Rev. 12-2001)

ADDENDUM to the Veolia Environment North America Operations, Inc.
SUMMONS - Intangible Property Transfers

## A. Definitions

1. The term "VENAO" means Veolia Environment North America Operations, Inc. and all entities over which Veolia Environment North America Operations, Inc. exercises or exercised legal or effective control.

2. The term "WASCO" means Water Applications & Systems Corporation which was formerly known as United States Filter Corp., and as of December 2006 became known as WASCO Limited Liability Company, and includes all entities over which WASCO exercised and exercises or exercised legal or effective control.

3. The term "USF" means United States Filter Corporation and includes all entities over which United States Filter Corporation exercised legal or effective control.

4. The term "document" is used in the broadest possible sense and means any written, printed, typed, photostatic, photographed, recorded, or otherwise produced communication or representation, whether comprised of letters, words, numbers, pictures, sounds, symbols, or any combination thereof. This definition includes, but is not limited to, originals and copies of agreements, engagement letters, engagement agreements, letters of intent, memoranda, minutes, notes, studies, reports, summaries, schedules, workpapers, analyses, projections, surveys, letters, other correspondence, charts, books, graphs, and printed matter. It also means audio or video tapes, outlines of oral presentations, notes of telephone or other conversations, diaries, appointment calendars, telegrams, cablegrams, facsimiles, other written notes or communications, financial records, checks, drafts, instruments, checkbook stubs and records, and any other writings. This definition also includes electronic mail and data, and documents stored electronically. It includes copies or duplicates of documents

ADDENDUM to the Veolia Environment North America Operations, Inc.
SUMMONS - Intangible Property Transfers

     contemporaneously or subsequently created which have any non-conforming notes or other markings. Further, this definition includes data compilations from which information can be obtained and all preliminary versions, drafts, or revisions of any document. This request also encompasses any exhibit, schedule, supplement, or attachment of any kind to any requested document.

5. Reference in this Addendum to any Party includes, but is not limited to, any affiliate, parent, subsidiary, assignee, designee, agent, trust, or trustee of the Party, and any successor in interest of any of the above, as well as any employee of the Party.

6. The term "VE" or "Veolia Environnement" means Veolia Environnement, SA, formerly known as Vivendi Environnement, SA (also refered to herein as "Vivendi Environnement") and all entities over which VE exercises or exercised legal or effective control.

7. The term "IP" means intangible property as any:

   a. patent, invention, formula, process, design, pattern, or know-how;

   b. copyright, literary, musical, or artistic composition;

   c. trademark, trade name, or brand name;

   d. franchise, license, or contract;

   e. method, program, system, procedure, campaign, survey, study, forecast, estimate, customer list, or technical date; or

   f. any similar item,

   which has substantial value independent of the services of any individual.

8. The term "BOOT" means <u>Build, Own, Operate, Transfer Agreements or any other similar agreement.</u>

2

ADDENDUM to the Veolia Environment North America Operations, Inc.
SUMMONS - Intangible Property Transfers

9. The term "Long Term Contract" means all contracts to perform services for any party for more than one year. This includes but is not limited to, all service, maintenance, operating, and BOOT contracts with any party, including, but not limited to, municipalities and industrial companies.

10. USF entered into an agreement to transfer over 100 foreign entities to *Societe D'Invesstments et De Gestion 39,* a subsididiary of VENAO's foreign parent, in a contract which was signed September 4, 2000 and *Amendment Nr 2* to that agreement dated December 18, 2001. The term "SIG 39" refers to this agreement and all changes, forms, and modifications to this agreement.

11. The term "10-K" means Form 10-K which was filed with the Securities and Exchange Commision, an agency of the United States government.

12. The term "IDR" means Information Document Request issued by the Internal Revenue Service to VENAO.

ADDENDUM to the Veolia Environment North America Operations, Inc.
SUMMONS - Intangible Property Transfers

**B.** **General Instructions**

1. Should any document be withheld on the grounds of privilege, state with respect to each document withheld:

   a. the identity of the author(s);
   b. the name and date of the document;
   c. the name(s) and address(es) of the recipient(s) of the document, including any copy of the document;
   d. the subject matter of the document;
   e. the privilege claimed and the basis for the claim; and,
   f. the number of the request to which the document would otherwise be responsive.

2. Should any document have been destroyed, state with respect to each document destroyed:

   a. the identity of the author(s);
   b. the name and date of the document;
   c. the name(s) and address(es) of the recipient(s) of the document, including any copy of the document;
   d. the subject matter of the document;
   e. the date of the destruction;
   f. the identity of the person(s) responsible for the destruction, or if routinely destroyed, an explanation of the applicable retention and destruction policy; and,
   g. the number of the request to which the document would otherwise be responsive.

ADDENDUM to the Veolia Environment North America Operations, Inc.
SUMMONS - Intangible Property Transfers

3. In the event that any document cannot be located, state with respect to each such document:

   a. the identity of the author(s);
   b. the name and date of the document;
   c. the name(s) and address(es) of the recipient(s) of the document, including any copy of the document;
   d. the subject matter of the document;
   e. the steps taken to find the document, including the identity of the individual(s) consulted and the identification of the files searched; and,
   f. the number of the request to which the
   g. document would otherwise be responsive.

4. In the event that any document cannot be provided, state with respect to each such document:

   a. the identity of the author(s);
   b. the name and date of the document;
   c. the name(s) and address(es) of the recipient(s) of the document, including any copy of the document;
   d. the subject matter of the document;
   e. the reason why the document cannot be provided; and,
   f. the number of the request to which the document would otherwise be responsive.

5. Should any document have been damaged, state with respect to each document damaged:

   a. the identity of the author(s);
   b. the name and date of the document;
   c. the name(s) and address(es) of the recipient(s) of the document, including any copy of the document;
   d. the subject matter of the document;
   e. the nature and cause of the damage; and,
   f. the number of the request to which the document would otherwise be responsive.

ADDENDUM to the Veolia Environment North America Operations, Inc.
SUMMONS – Intangible Property Transfers

C. **Documents Requested exclude documents identified in attached Exhibit A**

**Documents requested below relate to IDR TC-11 dated July 1, 2008 pertaining to Intangible Property and the Transfers of such. Provide the following documents:**

1. Documents that describe the Fair Market Value ("FMV" hereinafter) of USF's IP.

2. Documents that were prepared or used in the due diligence of USF's IP prior to the 1999 USF acquisition.

3. Documents which identify the individuals or parties responsible for conducting the due diligence of USF's IP prior to the 1999 acquisition by Eau Acquisition Corp.

4. Documents that describe why the assets identified during the due diligence period were of interest to Vivendi Universal, SA.

5. In connection with the acquisition of USF on or around April 23, 1999, provide all documents of due diligence concerning all IP or intangible assets.

6. Documents relating to the following assets which were identified in a presentation made to Vivendi's Board, per the board's minutes dated March 10, 1999:

    a. "A portfolio of recognized trademarks";

    b. "An extended portfolio of treatment technologies (2,600 patents)";

    c. "A large portfolio of private clients (residential and business)";

    d. "A network of relations with municipalities in the US, notably through its Waterworks distribution activity"; and

6

ADDENDUM to the Veolia Environment North America Operations, Inc.
SUMMONS - Intangible Property Transfers

    e. "A commercial and distribution strike force is across 610 plants, of which 72 are in Europe, 37 are in Asia and 15 are in Latin America and 1700 agents and distributors Culligan)in 90 countries".

7. Documents relating to the following assets which were identified in the Vivendi Environnement 2000 Annual Report (pages 80-81):

    a. €2,197 million in "well-known and established trademarks";

    b. More than €2.6 billion in brands and market share value;

    c. More than €600 million patents and licenses;

8. Documents that describe the sales terms of all USF/WASCO IP including, but not limited to, those identified in Number 7 above, which were subsequently transferred to VE.

9. Vivendi's Board minutes, Annex 5.4, dated March 10, 1999, provides that "OTV . . . could benefit from the better equipment solutions and engineering and manufacturing abilities of USF in the area of membranes (the abilities exist within the Lyon group for Waters with Aquasource), with all of this remaining open to developments by third parties." Provide all documents, including but not limited to, letters, e-mails, reports, analyses and presentations which provide details of the value to VE in the stated synergies of acquisition of USF.

10. Documents that Price Waterhouse Coopers ("PWC" hereinafter") had access to in order to estimate or determine the basis of WASCO.

ADDENDUM to the Veolia Environment North America Operations, Inc.
SUMMONS - Intangible Property Transfers

11. The Arthur Anderson due diligence report entitled "Project Notre Dame-Tax Matters"[1] provides:

   > It may be possible to transfer the ownership of a portion of the IP [intellectual property] related to future markets outside the US to a low taxed country, such as Switzerland. The low taxed entity then funds and owns its allocable share of the future research and development that relates to non-US markets. By shifting ownership of the intangible outside the US, the IP company is able to charge each local non-US country for use of the intangibles, generating deductions in high-taxed countries and generating income at vary [sic] tax rates.

   Produce all documents related to any such transfers outside of WASCO to VE. This includes, but is not limited to, documents which identify the transferor, the transferee, all related party transactions, the financial consideration, and US and foreign tax impacts.

12. Documents regarding intellectual property including patents, processes and technologies (e.g. membrane filtration, desalination, disinfection, molecular biology techniques) transferred from USF to VE.

13. Documents which discuss or determine cost savings and synergies VE anticipated when acquiring USF, including, but not limited to any documents which identify values placed on such synergies or cost savings.

14. Documents indicating the value of the intellectual property which was acquired in the acquisition of USF in 1999 and the subsequent sales or transfer of the intellectual property to related parties.

---

[1] which is a portion of the report whose copy of the executive summary provided to the IRS bears a handwritten date, "2 Avril 1999" page 29.

ADDENDUM to the Veolia Environment North America Operations, Inc.
SUMMONS - Intangible Property Transfers

13. According to the Vivendi Environnement Annual Report 2000, page 81, "market share values were subject to slight adjustments and the exchange effect on the market share value of USF was E150 million." Provide documents which demonstrate the calculation of the slight market share value adjustment and exchange effect on the market share value of USF.

14. According to the Vivendi Environnement Annual Report 2000, page 81, "Other intangible assets increased particularly in the water segment (patents and licenses booked as assets by USF)." Provide the documents with the calculations that supported the increase in book value of patents and licenses held by USF in the estimated amount of 262.2 million Euros.

**Documents requested below relate to I.D.R. TC-11 dated July 1, 2008. Provide the following documents:**

15. Documents which identify the individuals or parties responsible for conducting the due diligence of USF's Long Term Contracts, agreements with customers, and work backlogs prior to the acquisition of USF in 1999.

16. Documents related to the due diligience of USF's Long Term Contracts, agreements with customers, and work backlogs in connection with the acquisition of USF in 1999.

17. In connection with the Turkmenistan contract, identified as "Turkmenistan, June 98 MUSD 200" in the Arthur Anderson Project Notre Dame Executive Summary hand dated April 2, 1999, produce the following:

   a. Provide all documents which describe the terms of the Turkmenistan contract.

   b. Documents which identify the entity which currently performs the services anticipated to be performed for Turkmenistan in the Turkmenistan contract.

9

ADDENDUM to the Veolia Environment North America Operations, Inc.
SUMMONS - Intangible Property Transfers

      c.    Documents, including but not limited to, letters, e-mails, memos, contracts, agreements, and letters of intent whether signed or unsigned related to the transfer of the Turkmenistan contract or assuming any of the responsibilities from the proposed Turkmenistan contract from USF to any other entity.

      d.    Documents which describe the impact of the Turkmenistan contract on the calculation of the basis of WASCO.

18.    The Vivendi Environnement Annual Report 2000, page 44, provides "VE has approximately 5,000 contracts with municipal authorities to provide water and wastewater services including about 3,800 in France." Provide documents which identify the location and financial terms of the contracts with municipal authorities to provide water and wastewater services which originated by means of efforts by USF.

19.    Documents related to the transfer of USF Long Term Contracts to any other entity. This includes, but is not limited to, all documents of the financial terms of the sales or transfers.

20.    The Vivendi Environnement Annual Report 2000, page 64, provides "Revenue generated in 2000 by contracts that were *concerned* by the contribution effective November 1, 1999 but not transferred by December 31, 2000, totaled around €150 million in 2000." Provide documents which identify the USF originated contracts that were not transferred by December 31, 2000.

21.    Documents related to the transfer of USF to Proactiva Medio Ambiente, SA. This includes, but is not limited to, all documents of the financial terms of the sales or transfers.

ADDENDUM to the Veolia Environment North America Operations, Inc.
SUMMONS - Intangible Property Transfers

22. In connection with the municipal or industrial purification stations (200 stations) referenced in Vivendi's Board minutes, Annex 5.4, dated March 10, 1999, provide the following:

   a. Documents which identify the location of the municipal or industrial purification stations.

   b. Documents that identify the USF entities that were a party to contracts relating to the municipal or industrial purification stations.

   c. Documents that describe the financial terms of contracts relating to the municipal or industrial purification stations.

23. In connection with the Vivendi's Board minutes dated March 10, 1999, produce the following:

   a. A complete copy of Vivendi's Board minutes dated March 10, 1999.

   b. A complete report of Annex 5.4 that was part of Vivendi's Board minutes dated March 10, 1999.

   c. All source documents for the Vivendi's Board minutes dated March 10, 1999, including but not limited to, all internal analysis, external consulting reports, engagement letters relating to those consulting reports, offering memoranda, and consultant work papers.

24. All documents that reference Annex 5.4, from Vivendi's Board minutes dated March 10, 1999.

25. Documents which identify all contracts to outsource water treatment entered into by the joint venture created in 1995, referred to in the United States Filter Form 10-K (Annual Report) filed 06/29/98 for the Period Ending 03/31/98 as "Treated Water Outsourcing("TWO"), a joint venture…".

ADDENDUM to the Veolia Environment North America Operations, Inc.
SUMMONS - Intangible Property Transfers

26. Documents which identify all transfers of customer contracts of the joint venture Treated Water Outsourcing (a/k/a "TWO") to VE.

27. The following requested items are referred to in the due diligence document prepared by Arthur Andersen titled "Project Notre Dame-Water and Waste Water Group", Exhibit VI which is titled "TWO November 30, 1998 financial statements and summary contracts", which provides financial data for 35 operating contracts and 13 signed contracts that USF entered into as a 50-50 joint venture with a chemical company.

   a. Provide documents which identify or describe the contracts in which the indemnification responsibility between related parties changed with respect to each contract guarantee or warranty agreement.

   b. Provide documents which identify or describe the contracts in which ownership changed and the terms of the sales between related parties.

   c. Provide documents which determine or discuss the value of the indemnification guarantees.

28. Documents that identify or describe all of the Long-Term Contracts that were transferred as part of SIG 39, including, but not limited to, the following:

   a. Documents that identify or describe the entities which were party to these Long Term Contracts.

   b. Documents that identify or describe the value of these Long Term Contracts.

ADDENDUM to the Veolia Environment North America Operations, Inc.
SUMMONS - Intangible Property Transfers

29. Documents which identify or describe all Long Term Contracts associated with the 201 subsidiaries reported by USF in its 1998 10-K, including, but not limited to, the following:

   a. Documents which identify or describe the entities which were party to these Long Term Contracts.

   b. All documents which identify or describe the value of these Long Term Contracts.

   c. Documents which identify or describe how all guarantee agreements were valued for all Long Term Contracts associated with the 201 subsidiaries reported by USF in its year 1998 form 10-K.

30. Provide the damage and liability insurance policies for all USF Long Term Contracts for the period of 1999 thru 2006, including, but not limited to, all foreign and domestic BOOT contracts and the Bendigo project contract in Australia.

31. Provide the loss of business insurance policies for all USF Long Term Contracts for the period of 1999 through 2006, including, but not limited to, the Bendigo project contract in Australia.

ADDENDUM to the Veolia Environment North America Operations, Inc.
SUMMONS - Intangible Property Transfers

### Exhibit A

This summons excludes the following items previously provided to the I.R.S.:

1. All Items Listed on Exhibit A, including all attachments, to the Summons ADDENDUM TO THE Veolia Environment North America Operations, Inc. SUMMONS - Worthless Stock Loss.