IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civ. No. 13-mc-03-LPS |
| | : | |
| VEOLIA ENVIRONNEMENT NORTH | : | |
| AMERICA OPERATIONS, INC., | : | |
| | : | |
| Respondent. | : | |

## MEMORANDUM ORDER

Pending before the Court is Petitioner United States of America's Motion to Enforce
Internal Revenue Service ("IRS") Summonses against Veolia Environnement North America
Operations, Inc. ("Taxpayer"). (D.I. 1)  The Taxpayer has refused to produce certain materials
sought by the IRS based on the Taxpayer's assertion of work product protection, attorney-client
privilege, and the tax practitioner privilege.

## BACKGROUND

### I.     The IRS Audit

This dispute arises out of an IRS audit of the Taxpayer regarding a $4.5 billion worthless
stock deduction claimed by the Taxpayer on its 2006 U.S. federal income tax return.  (D.I. 5; D.I.
11)  The Taxpayer is a U.S. holding company owned by Veolia Environnement S.A. ("VE"),
which is itself a subsidiary of Vivendi S.A., a multi-billion dollar French conglomerate.  (D.I. 11
Ex. 1 ¶¶ 7-8)

In April 1999, the Taxpayer purchased Water Application & Solutions Corporation[1]

---

[1]Until 2004, WASCO was known as U.S. Filter Corporation.  (D.I. 11-1 ¶ 4)

1

("WASCO") for $8.2 billion. (D.I. 8 ¶ 6) By 2006, the Taxpayer had come to the conclusion that WASCO's stock was worthless. It retained legal advisors and tax experts to identify a means by which it could claim WASCO's stock as a deduction under Section 165(g) of the Internal Revenue Code, 26 U.S.C. § 165(g). (D.I. 7 ¶¶ 7-11) Specifically, the Taxpayer intended to reduce ordinary income by taking a deduction for worthless securities in affiliated corporations. *See* 26 U.S.C. § 165(g)(3); *see also* D.I. 11 at 3-4.

At some point in 2006, the Taxpayer decided that converting WASCO to a Delaware Limited Liability Corporation ("LLC") could be a viable "trigger" for claiming the deduction on its tax return. (D.I. 8 ¶ 10) Before finalizing the decision to convert WASCO to an LLC and claim the deduction, the Taxpayer, in March 2006, began looking for a law firm to provide tax advice regarding the worthless stock deduction and how to best prepare the Taxpayer's case. (D.I. 8 ¶ 11) By March 23, 2006, the Taxpayer had retained counsel at Cleary Gottlieb Steen & Hamilton LLP ("Cleary Gottlieb") (D.I. 13 Ex. 1), and, thereafter, the Taxpayer sought and obtained a private letter ruling from the IRS interpreting Section 165(g), *see* I.R.S. Priv. Ltr. Rul. 200710004, 2007 WL 707858 (Dec. 5, 2006). Further, in the fall of 2006, the Taxpayer and VE hired two valuation firms, Aon Accuracy ("Aon") and XRoads Solutions Group LLP ("XRoads"), to evaluate and produce written reports on WASCO's insolvency. (D.I. 7 ¶¶ 7-8; D.I. 8 ¶¶ 18, 20-21) On December 18, 2006, the Boards of Directors of WASCO and the Taxpayer met and authorized the companies to pursue the claim. (D.I. 7 ¶ 12) Several days later, on December 22, 2006, WASCO was converted to an LLC. (D.I. 7 ¶ 15)

In February 2007, the Taxpayer – already under audit by the IRS for its 2004 and 2005 returns – applied for and subsequently enrolled in the IRS's newly established Pre-Filing

2

Agreement ("PFA") program, which was created "to resolve, before returns are filed, issues that are likely to be disputed in post-filing audits." (D.I. 11 at 4-5 (quoting Rev. Proc. 2005-12, 2005-1 C.B. 311, 2004 WL 2956045, § 2 (Dec. 22, 2004)); *see also* D.I. 8 ¶ 28; D.I. 5 at 4)  In April 2007, VE and the Taxpayer hired a third valuation firm, Duff & Phelps LLC ("Duff & Phelps"), to produce an independent valuation of WASCO's stock.  (D.I. 8 ¶ 30; D.I. 5 at 5)  The Taxpayer provided the IRS with the final versions of the reports on WASCO's stock prepared by XRoads and Duff & Phelps, in an effort to bolster its claim that WASCO's stock was worthless.  (D.I. 8 ¶ 31; D.I. 5 at 5)

On December 5, 2008 the IRS issued summonses for a variety of documents in the Taxpayer's possession.  (D.I. 1 at ¶ 8)  While the Taxpayer produced "hundreds of thousands of pages in response to hundreds of requests from the IRS" (D.I. 4 at ¶ 10), it has also withheld 361 documents and portions of 45 documents.  (D.I. 5 at 1; *See also* D.I. 8 ¶ 43) (stating that Taxpayer produced 641,415 bates-stamped pages to IRS between January 2009 and April 2013) The Taxpayer's refusal to produce these materials was based on its assertion of several privileges: (1) work product protection under Federal Rules of Civil Procedure 26(b)(3); (2) the attorney-client privilege; and (3) the tax practitioner privilege under 26 U.S.C. § 7525(a)(1). (D.I. 5; D.I. 12)

The Taxpayer has provided completion statements that cover each of the questions in the summonses, essentially attesting that the Taxpayer "has conducted a diligent, good faith search for the requested information," has produced to the IRS "[a]ll responsive documents that were located as a result of the Taxpayer's search (and not otherwise identified to the IRS as being privileged)," and "is unable to locate any additional responsive information."  (D.I. 5 at 5 & n.9;

3

D.I. 6 Exs. 8-12)  The government has not accepted these completion statements as proof of the

Taxpayer's full compliance with the summonses.  (D.I. 11 at 1 n.2; *see also* transcript of Apr. 30,

2013 hrg. (D.I. 21) ("Tr."))

## II.    The Motion to Enforce

On January 4, 2013, the government filed a motion to enforce the summonses and compel

the production of the documents withheld by the Taxpayer.  (D.I. 1)[2]  The government contends

that the withheld documents fall into two categories: (1) materials related to the expert reports

and (2) materials that are otherwise not privileged.  (D.I. 11 at 5)  As to the first category, the

parties' fundamental dispute relates to the scope of allowable discovery under Federal Rule of

Civil Procedure 26(b) and the distinction between testifying and non-testifying experts.  (D.I. 11

at 6-7; D.I. 12 at 3)  With respect to the second category, the government argues that the

Taxpayer has failed to meet its burden to establish, document by document, that a privilege

applies and was not waived.  (D.I. 11 at 5)

On April 30, 2013, following briefing, the Court held a hearing regarding the

government's motion.[3]  Among the matters discussed were whether the Court should review a

---

[2]This Court's jurisdiction is not contested.  (*See* D.I. 4 ¶ 1)

[3]The order proposed by the government and entered by the Court in scheduling the April
2013 hearing included a finding that "the file in this matter reflects a *prima facie* showing" of the
factors the government must show in order to obtain enforcement of the summonses.  (D.I. 2 ¶ 3)
The Supreme Court set out the relevant four-part test in *United States v. Powell*, 379 U.S. 48, 57-
58 (1964), requiring the government to show that: (1) the investigation will be conducted
pursuant to a legitimate purpose; (2) the inquiry may be relevant to the purpose; (3) the
information sought is not already within the government's possession; and (4) the administrative
steps required by the Internal Revenue Code have been followed.  The Taxpayer does not appear
to dispute that the government has made out a *prima facie* case; hence, the burden to justify
withholding the summonsed documents has shifted to the Taxpayer.  (*See* D.I. 11 at 6)

portion of the withheld documents *in camera* and, if so, which ones. (*See* Tr. at 14) After the

parties further met and conferred, the government agreed to withdraw its request for 178

documents and asked the Court to review a sample of 55 documents representative of the

remaining 228 contested documents. (D.I. 16 at 2) The Court then ordered the Taxpayer to

submit the requested 55 documents for *in camera* review (D.I. 18), and on May 24, 2013 the

Taxpayer did so.

**LEGAL STANDARDS**

**I.    Work Product Protection**

Federal Rule of Civil Procedure 26(b)(1) provides broadly that "[p]arties may obtain

discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . ."

The work product exception to this disclosure requirement is set forth in Rule 26(b)(3)(A), which

states: "Ordinarily, a party may not discover documents . . . that are prepared in anticipation of

litigation or for trial by or for another party or its representative." This work product doctrine

functions to "promote[] the adversary system" by guarding the confidentiality of documents

prepared in anticipation of litigation, allowing a party to prepare for litigation without fear that its

work product will be used against it. *See Westinghouse Elec. Corp. v. Republic of Philippines*,

951 F.2d 1414, 1428 (3d Cir. 1991); *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947). Work

product protection is limited to documents actually prepared in anticipation of litigation and does

not apply to "[m]aterials assembled in the ordinary course of business." Fed. R. Civ. P. 26(b)(3),

adv. comm. note (1970).

The "burden of demonstrating that a document is protected as work-product rests with the

party asserting the doctrine." *Conoco Inc. v. U.S. Dept. of Justice*, 687 F.2d 724, 730 (3d Cir.

5

1982). "Only by looking to the state of mind of the party preparing the document, or . . . the

party ordering the preparation of the document" can the Court determine if a document comes

within the scope of Rule 26(b)(3) protection. *Martin v. Bally's Park*, 983 F.2d 1252, 1260 (3d

Cir. 1993). In addition to showing the appropriate subjective intent, a party withholding a

document on the basis of work product protection must also show that the anticipation of

litigation was objectively reasonable:

> Prudent parties anticipate litigation and begin preparation prior to
> the time suit is formally commenced. Thus, the test should be
> whether in light of the nature of the document and the factual
> situation in the particular case, the document can fairly be said to
> have been prepared or obtained because of the prospect of
> litigation.

*Id.* (internal quotation marks omitted).

## II.    Attorney-Expert Communications

Federal Rule of Civil Procedure 26(a)(2)(B)(ii) mandates the disclosure of all "facts or

data considered by" an expert witness retained or employed to provide expert testimony "in

forming" "opinions the witness will express." *See also* Fed. R. Civ. P. 26(a)(2)(B)(i). In 2010,

Rule 26 was amended to "address concerns about expert discovery," including by adding Rule

26(b)(4)(B), protecting drafts of export reports required under Rule 26(a)(2). *See* adv. comm.

notes (2010). Also added was Rule 26(b)(4)(C), which "protect[s] communications between the

party's attorney and any [expert] witness required to provide a report under Rule 26(a)(2)(B),"

with three exceptions into which discovery is permitted: "communications [that] (i) relate to

compensation for the expert's study or testimony; (ii) identify facts or data that the party's

attorney provided and that the expert considered in forming the opinions to be expressed; or

(iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed." The advisory committee notes accompanying the 2010 amendments state: "The addition of Rule 26(b)(4)(C) is designed to protect counsel's work product and ensure that lawyers may interact with retained experts without fear of exposing these communications."[4]

### III.    Attorney-Client Privilege

The attorney-client privilege protects communications between a client and its attorney related to the purpose of securing legal advice. *See Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 852 (3d Cir. 1994). The privilege applies to communications from an attorney to a client as well as from a client to its attorney. *See Upjohn v. United States*, 449 U.S. 383, 390 (1981). The burden of demonstrating the applicability of the attorney-client privilege rests on the party asserting the privilege. *See Matter of Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120 (3d Cir. 1986). Specifically, the party asserting privilege must show each of the following:

> (1) [T]he asserted holder of the privilege is or sought to become a client;
>
> (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this

---

[4]It appears that courts have largely taken a narrow view of the protections from discovery provided in the post-2010 Rules 26(b)(4)(B) and (C). *See Fialkowski v. Perry*, 2012 WL 2527020, at *4 (E.D. Pa. June 29, 2012) (emphasizing Rule 26(b)(4)(C) is designed to protect just counsel's communications with expert); *In re Application of Republic of Ecuador*, 280 F.R.D. 506, 514-16 (N.D. Cal. 2012) (stating Rule 26(b)(4)(C) does not protect communications between non-attorney employees of corporation and its expert witness, nor those between testifying and non-testifying experts); *Dongguk Univ. v. Yale Univ.*, 2011 WL 1935865, at *1–2 (D.Conn. May 19, 2011) (denying work product protection to expert's handwritten notes).

communication is acting as a lawyer;

(3) the communication relates to a fact of which the
attorney was informed (a) by his client (b) without
the presence of strangers (c) for the purpose of
securing primarily either (i) an opinion on law or
(ii) legal services or (iii) assistance in some legal
proceeding, and not (d) for the purpose of
committing a crime or tort; and

(4) the privilege has been (a) claimed and (b) not
waived by the client.

*In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d Cir. 1979) (internal quotation marks
omitted).

## IV.    Tax Practitioner Privilege

Pursuant to 26 U.S.C. § 7525(a)(1), communications between a taxpayer and a "federally
authorized tax practitioner" for the purpose of obtaining tax advice are privileged, "to the extent
the communication would be considered a privileged communication if it were between a
taxpayer and an attorney." *See generally Chao v. Koresko*, 2005 WL 2521886 (3d Cir. Oct. 12,
2005) (recognizing tax practitioner privilege).  Section 7525 codifies the tax practitioner
privilege as reflecting "the same common law protections of confidentiality which apply to a
communication between a taxpayer and an attorney," and, thus, " the scope of the tax
practitioner-client privilege depends on the scope of the common law protections of confidential
attorney-client communications." *United States v. BDO Seidman*, 337 F.3d 802, 810 (7th Cir.
2003).

## DISCUSSION

Having considered the parties' arguments and the law, and reviewed the 55 submitted

8

documents *in camera*, the Court is able to resolve at least a portion of the parties' dispute.  The

Court's findings and conclusions are provided below.

## I.     The Taxpayer Anticipated Litigation

An issue central to the Taxpayer's assertion of work product protection is whether the

Taxpayer anticipated litigation with the IRS relating to the $4.5 billion stock deduction.  The

Taxpayer contends that it anticipated litigation as early as March 2006, "when it began to plan in

earnest for the potential IRS dispute" by hiring outside counsel to analyze the legal ramifications

of the potential tax write-off.  (D.I. 5 at 14)[5]  The Taxpayer asserts that it took this action because

"it was essentially provoking a dispute with the IRS by choosing to claim a $4.5 billion worthless

stock deduction."  *Id.*  The government, however, maintains that the Taxpayer has failed to show

that it anticipated litigation because the Taxpayer's ordinary business activities involve

"acquiring, managing, and divesting operating companies," such as WASCO, including with the

goal of restructuring companies in order to derive tax benefits.  (D.I. 11 at 13)  In that light,

WASCO's conversion to an LLC and the Taxpayer's worthless stock deduction were the types of

business actions the Taxpayer regularly undertakes.

On this issue the Court finds that the Taxpayer has met its burden to prove that it

anticipated litigation at least as early as March 2006.  The record shows that the Taxpayer sought

the valuation reports because of the prospect of litigation with the IRS, believing that an IRS

audit was probable.  This was also the reason the Taxpayer retained outside counsel Cleary

Gottlieb and chose to seek – and obtained – a private letter ruling from the IRS interpreting

---

[5]The Taxpayer is claiming work product protection in connection with the worthless stock
deduction for documents created in or after March 2006.  (D.I. 5 at 14 n.20)

Section 165(g). It was further the reason the Taxpayer applied to participate in the IRS PFA program, a program intended to address "issues that are likely to be ***disputed*** in post-filing audits." Rev. Proc. 2005-12, 2005-1 C.B. 311, 2004 WL 2956045, § 2 (Dec. 22, 2004) (emphasis added).[6] Thus, the Taxpayer subjectively anticipated litigation.

The Taxpayer's expectation of litigation was objectively reasonable, particularly given the sheer size of the deduction – $4.5 ***billion*** – and the fact that the Taxpayer was already under audit by the IRS for its prior year returns. (*See* D.I. 5 at 4)[7] *See also United States v. Roxworthy*, 457 F.3d 590, 600 (6th Cir. 2006) (finding it reasonable for taxpayer to anticipate litigation based on, *inter alia*, size of transactions and likelihood of IRS challenge).

Documents being withheld by the Taxpayer support these conclusions. For example, memoranda from the Taxpayer's general counsel and outside counsel identify not only that the Taxpayer expected the transaction would come under scrutiny by the IRS, but also specifically remark on the importance of the role of the independent valuation report from XRoads in any potential litigation. *See* Priv. Log Doc. No. 2. Communications among the Taxpayer, outside

---

[6]The government observes that the Taxpayer, in its PFA request, stated its belief that "the issue that is subject to this PFA request can reasonably be resolved" before the time the Taxpayer intended to file its 2006 return. (D.I. 11 at 4-5) The Court does not agree with the government that the facts relating to the PFA "undermine[]" the Taxpayer's contention that it anticipated litigation in 2006 and 2007. (D.I. 11 at 14-15) Instead, in the Court's view, the Taxpayer's participation in the PFA in 2007 corroborates the Taxpayer's contention that, by March 2006, it knew it was provoking a battle with the IRS, and was therefore looking for avenues in which to resolve the all-but-inevitable dispute it would have with the IRS.

[7]The government does not appear to dispute that anticipation of an audit satisfies the requirement of anticipation of litigation. *See generally Hodges, Grant & Kaufman v. United States*, 768 F.2d 719, 722 (5th Cir. 1985) ("If the document was prepared in anticipation of 'dealing with the IRS,' it may well have been prepared in anticipation of an administrative dispute and this may constitute 'litigation' within the meaning of Rule 26.").

counsel, and its consultants indicate that the valuation reports were a foundational part of a strategy to resist an IRS audit. *See* Priv. Log Doc. No. 274. Indeed, the records corroborate the Taxpayer's narrative that it decided in early 2006 that a conversion of WASCO to an LLC was feasible and took steps over the ensuing months to bolster its legal position in an anticipated dispute with the IRS. *See* Priv. Log Doc. 245 (containing summary of potential WASCO transactions); *see also* Priv. Log Doc. 90 (providing legal advice and statement of facts for IRS private letter ruling on Code section governing deduction).

For these reasons, even crediting the government's contention that the conversion of WASCO and the worthless stock deduction were transactions of a type the Taxpayer undertakes in the ordinary course of its business, such an overlap, under the circumstances here, does not deprive the Taxpayer of the opportunity to meet its burden to show that it anticipated litigation would arise from these particular transactions. *See Martin*, 983 F.2d at 1260 ("[T]he test should be whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation."). Importantly, there is no evidence that the specific transaction at issue – that is, the conversion of WASCO to a Delaware LLC – was undertaken for any purpose *other than* to enable to Taxpayer to recognize a $4.5 billion loss on its tax return and then litigate with the IRS over the legitimacy of that deduction.

Thus, as explained above, the Court finds that the Taxpayer has met its burden to show it subjectively and reasonably anticipated litigation.[8]

---

[8]To the extent the government is arguing that it can, pursuant to Rule 26(b)(3)(A), overcome any non-waived showing of work product protection established by the Taxpayer (*see* D.I. 11 at 8-11), the Court does not agree. Given the voluminous materials already produced by

The Court is not, at this point, making a specific holding with respect to any particular document. Rather, the Court is hopeful that the factual finding described above will assist the parties in resolving their dispute, at least in relation to the Taxpayer's assertion of work product protection.

## II.    Materials Relied On By Experts

The parties dispute whether certain materials pertaining to the creation of the appraisal reports by XRoads and Duff & Phelps must be disclosed by the Taxpayer to the IRS. It is undisputed that XRoads and Duff & Phelps are testifying experts who must provide a written report, as required by Rule 26(a)(2)(B). (D.I. 11 at 7; D.I. 12 at 2)

The government contends that the Taxpayer has failed to disclose the "facts, data, and assumptions that were provided, *by anyone*, to, and were considered or relied on by, [the Taxpayer's] valuation firms in forming the opinions to be expressed in the appraisal reports." (D.I. 11 at 5) (emphasis added) The Taxpayer, by contrast, states the requirement somewhat differently, maintaining that it has already provided the government with "all factual information *it* provided" to XRoads and Duff & Phelps, including "copies of *its* communications . . . to the extent the communications relate to" compensation for the two firms, as well as facts, data, or assumptions provided to and considered by the two firms in forming their opinions. (D.I. 8 at 8-

---

the Taxpayer, as well as any additional materials the Taxpayer may be ordered to provide pursuant to the rulings contained herein and in any subsequent orders, the government has not "show[n] that it has substantial need for the materials to prepare its case," and has further failed to show that it "cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). In any event, it appears that the government argues that it has shown "substantial need" only with respect to "the facts, data and assumptions that VENAO's experts considered or relied upon." (D.I. 11 at 9)  As explained in the next section, the Court agrees with the government that such "facts, data, and assumptions" are not protected work product, so with respect to these there is no need to reach the "substantial need" inquiry.

9) (emphasis added) It appears from the Court's review of the documents submitted *in camera* that the parties' dispute is over the meaning of Rule 26(b)(4)(C), as it appears that the Taxpayer has withheld documents containing communications of facts or data to XRoads provided by entities other than the Taxpayer. (*See, e.g.*, Priv. Log Doc. 297 (containing email chain between XRoads and non-testifying expert Aon); *see also* D.I. 12 at 2-3)

On this issue the Court agrees with the government. Rule 26(b)(4)(C) only protects "communications between *the party's attorney*" and that party's testifying expert (i.e., a Rule 26(a)(2) expert). Communications of "facts or data . . . that the expert considered in forming the opinions to be expressed" that were provided to the expert by sources other than "the party's attorney" are not protected by Rule 26(b)(4)(C). Nor, here, has the Taxpayer identified any other source of protection from disclosure of such "facts or data."

The Court's conclusion is supported by other courts to have considered the issue, *see Fialkowski v. Perry*, 2012 WL 2527020, at *4 (E.D. Pa. June 29, 2012) (stating that disclosure requirements for testifying experts "were meant to trump all claims of privilege, mandating production of all information furnished to the testifying expert for consideration in the formulation of [the expert's] opinions, regardless of privilege"), as well as the 2010 advisory committee notes ("[T]he intention is that 'facts or data' be interpreted broadly to require disclosure of any material considered by the expert, *from whatever source*, that contains factual ingredients. . . . The protection is limited to communications between an expert witness required to provide a report under Rule 26(a)(2)(B) and the *attorney* for the party on whose behalf the witness will be testifying . . . .") (emphasis added). It is also the logical result: as one of the *exceptions* to protection from disclosure of attorney-expert communications is communications

13

that "identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed," Fed. R. Civ. P. 26(b)(4)(C)(ii), there is no reason that communications from someone *other than* the party's attorney that likewise identify such "facts or data" should be protected from disclosure.

Therefore, the Court concludes that the Taxpayer must produce, in response to the summonses, any materials containing facts or data considered by XRoads or Duff & Phelps in forming the opinions expressed in their reports – even if such facts or data were provided by Aon or anyone else or any entity other than the Taxpayer and the Taxpayer's attorneys – unless the Taxpayer can demonstrate some basis for non-disclosure.[9]

### III. Attorney-Client And Tax Practitioner Privileges

The government contends that, with respect to at least some of the withheld documents as to which the Taxpayer is asserting attorney-client and tax-practitioner privileges, the Taxpayer has failed to meet its burden that the materials relate to and were necessary to obtain legal advice. (D.I. 11 at 12-13) Among the requirements for a proper assertion of privilege is a showing that the communication in question was made "for the purpose of obtaining or providing legal assistance for the client." *In re Teleglobe Comms. Corp.*, 493 F.3d 345, 359 (3d Cir. 2007)

---

[9]Notwithstanding the government's statement at the hearing that it was "not seeking draft reports of the XRoads and Duff & Phelps appraisal reports. . . . Rule 26(b)(4) is pretty clear. Draft reports are out" (Tr. at 12-13), subsequently the government advised the Court that it *is* "seeking the draft reports, or portions of the draft reports, that are not privileged due to issues raised" in the government's briefs, namely that the drafts contain communications within the exceptions to the work product doctrine (Fed. R. Civ. P. 26(b)(4)(C)(i)-(iii)) or were disclosed to Valerie Clavie, an officer of VE (D.I. 19 at 1-2). The Court agrees with the Taxpayer (D.I. 20) that it need not produce the draft reports. *See* Fed. R. Civ. P. 26(b)(4)(B) ("Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded.")

(attorney-client privilege); *United States v. Trenk*, 2009 WL 485375, at *4 (D.N.J. Feb. 26, 2009)

("The scope of the Section 7525 privilege depends on the scope of the attorney-client privilege

and is no broader than the attorney-client privilege."). While the Court agrees with the

government that non-legal business advice is "not covered by either the attorney-client or the tax

practitioner-client privilege" (D.I. 11 at 16), the Court also recognizes that the Taxpayer contends

that the documents the Taxpayer seeks to withhold on the basis of these privileges do involve

legal advice. In particular, the documents that the Taxpayer is withholding relate to "legal and

tax analyses of complicated provisions of the [Internal Revenue] Code." (D.I. 12 at 2)

Even after reviewing the sample of withheld documents *in camera*, the Court is not, yet,

in a position to resolve this portion of the dispute on a document-by-document basis.

Additionally, given the rulings the Court has made elsewhere in this opinion, the Court needs the

parties' assistance in determining which documents (if any) remain in dispute. Thus, the Court

will direct the parties to submit their proposal(s) as to how the Court should proceed with respect

to evaluating the application of these privileges.

## IV.    Waiver

The government contends that even if the Taxpayer has met its burden and demonstrated

that one or more of the withheld documents are properly withheld on the basis of an assertion of

work product protection or the attorney-client or tax practitioner privilege, those protections have

been waived, and the withheld documents should therefore be produced. (D.I. 11 at 11-12)

Federal Rule of Evidence 502(a) provides that when a disclosure is made to a federal agency and

waives the attorney-client or work product protection, "the waiver extends to an undisclosed

communication or information . . . only if" the waiver is intentional, the disclosed and

15

undisclosed communications or information concern the same subject matter, and "they ought in fairness to be considered together." As with the "substantial need" exception to work product protection, the government's waiver argument appears to be offered only as a means to obtain "the facts, data, and assumptions that were considered and/or relied upon by VENAO's experts," on the grounds that these "ought in fairness to be considered together." (D.I. 11 at 12) (quoting Fed. R. Evid. 502(a)) The Court agrees with the government's premise, but not its conclusion. Since the facts, data, and assumptions that were provided to XRoads and Duff & Phelps are not protected from disclosure or otherwise privileged, there is no protection or privilege for the Taxpayer to waive.

Finally, the government makes another waiver argument: that some of the withheld materials were shared widely among individuals who work for the Taxpayer, as well as individuals who were only employed by related entities. (*See* D.I. 11 at 16-17) The Court is persuaded by the Taxpayer that it had common interests with its parent and other affiliated entities and that "the presence of the individuals participating in the communications was necessary for obtaining or acting upon the legal or tax advice sought." (D.I. 12 at 2; *see also id.* at 8-9; D.I. 14) The government has failed to show that there was a waiver.

## CONCLUSION

The Court is hopeful that the findings and conclusions stated above will assist the parties in resolving, in whole or at least in substantial part, their disputes with respect to the withheld documents. Accordingly, IT IS HEREBY ORDERED that the parties shall meet and confer and shall, no later than **November 8, 2013**, submit a joint status report advising the Court as to whether they have any remaining disputes requiring judicial resolution, including identifying

which, if any, of the 55 sample documents as to which they require the Court to make a specific

ruling as to the necessity of production.

October 25, 2013
Wilmington, Delaware

UNITED STATES DISTRICT JUDGE

17