## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| UNITED STATES OF AMERICA, | : | |
|---|---|---|
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civ. No. 13-mc-03-LPS |
| | : | |
| VEOLIA ENVIRONNEMENT NORTH | : | |
| AMERICA OPERATIONS, INC., | : | |
| | : | |
| Respondent. | : | |

Kathryn Keneally, Nathan L. Strup, UNITED STATES DEPARTMENT OF JUSTICE, Washington, DC.

    Attorneys for Petitioner.

Philip A. Rovner, Jonathan A. Choa, POTTER ANDERSON & COOPER LLP, Wilmington, DE.

Breon S. Peace, Yaron Z. Reich, Jonathan Gifford, CLEARY GOTTLIEB STEEN & HAMILTON LLP, New York, NY.

    Attorneys for Respondent.

## MEMORANDUM OPINION

October 31, 2014
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court is Petitioner United States of America's Motion to Enforce Internal Revenue Service ("IRS") Summonses against Veolia Environnement North America Operations, Inc. ("Taxpayer"). (D.I. 1) Taxpayer has refused to produce materials sought by the IRS based on Taxpayer's assertion of work-product protection, attorney-client privilege, and tax practitioner privilege.

## BACKGROUND[1]

### I.    The IRS Audit

This dispute arises out of an IRS audit of Taxpayer's 2006 U.S. federal income tax return, in which Taxpayer claimed a $4.5 billion worthless stock deduction. (D.I. 5 at 2; D.I. 11 at 1) Taxpayer is a U.S. holding company owned by Veolia Environnement S.A. ("VE"), which is itself a subsidiary of Vivendi S.A., a multi-billion dollar French conglomerate. (D.I. 11 Ex. 1 ¶¶ 7-8)

In April 1999, Taxpayer purchased Water Application & Solutions Corporation[2] ("WASCO") for $8.2 billion. (D.I. 8 ¶ 6) By 2006, Taxpayer had come to the conclusion that WASCO's stock was worthless. It then retained legal advisors and tax experts to identify a means by which it could claim WASCO's stock as a deduction under Section 165(g) of the Internal Revenue Code, 26 U.S.C. § 165(g). (D.I. 7 ¶¶ 7-11) Specifically, Taxpayer intended to reduce ordinary income by taking a deduction for worthless securities in affiliated corporations.

---

[1]Additional background material can be found in the Court's Memorandum and Order dated October 25, 2013. (D.I. 23)

[2]WASCO was known as U.S. Filter Corporation until 2004. (D.I. 11-1 ¶ 4)

1

*See* 26 U.S.C. § 165(g)(3); *see also* D.I. 11 at 3-4.

In 2006, Taxpayer determined that converting WASCO to a Delaware Limited Liability Corporation ("LLC") could be a viable "trigger" for claiming the deduction on its tax return. (D.I. 8 ¶ 10) Before finalizing the decision to convert WASCO to an LLC and claim the deduction, Taxpayer and VE retained counsel at Cleary Gottlieb Steen & Hamilton LLP ("Cleary Gottlieb") for legal advice, and additionally hired two valuation firms, Aon Accuracy ("Aon") and XRoads Solutions Group LLP ("XRoads"), to evaluate and produce written reports on WASCO's insolvency. (D.I. 7 ¶¶ 7-8; D.I. 8 ¶¶ 18, 20-21) On December 18, 2006, the Boards of Directors of WASCO and Taxpayer met and authorized the companies to pursue the claim. (D.I. 7 ¶ 12) Several days later, on December 22, 2006, WASCO was converted to an LLC. (D.I. 7 ¶ 15)

In February 2007, Taxpayer – already under audit by the IRS for its 2004 and 2005 returns – applied for and subsequently enrolled in the IRS's newly established Pre-Filing Agreement ("PFA") program, which was created "to resolve, before returns are filed, issues that are likely to be disputed in post-filing audits." (D.I. 8 ¶ 28; D.I. 11 at 4-5; *see also* D.I. 5 at 4)[3] In April 2007, VE and Taxpayer hired a third valuation firm, Duff & Phelps LLC ("Duff & Phelps"), to produce an independent valuation of WASCO's stock. (D.I. 8 ¶ 30; D.I. 5 at 5) Taxpayer provided the IRS with XRoads' final versions of the reports on WASCO's stock, which both XRoads and Duff & Phelps prepared, as an effort to bolster Taxpayer's claim that WASCO's stock was worthless. (D.I. 8 ¶ 31; D.I. 5 at 5)

On December 5, 2008, the IRS issued summonses for a variety of documents in

---

[3]Quoting Rev. Proc. 2005-12, 2005-1 C.B. 311, 2004 WL 2956045, § 2 (Dec. 22, 2004).

Taxpayer's possession. (D.I. 1 at ¶ 8) While Taxpayer produced "hundreds of thousands of pages in response to hundreds of requests from the IRS" (D.I. 4 at ¶ 10), it initially withheld 361 documents and portions of 45 documents. (D.I. 5 at 1; *see also* D.I. 8 ¶ 43) (stating that Taxpayer produced 641,415 bates-stamped pages to IRS between January 2009 and April 2013) Taxpayer refused to produce these materials based on its assertion of several privileges: (1) work-product protection under Federal Rule of Civil Procedure 26(b)(3); (2) attorney-client privilege; and (3) tax practitioner privilege under 26 U.S.C. § 7525(a)(1). (D.I. 5; D.I. 12)

## II. Procedural History

On January 4, 2013, the government filed this action to enforce the summonses and compel the production of the documents withheld by Taxpayer. (D.I. 1)[4] On April 30, 2013, following briefing, the Court held a hearing regarding the government's motion. (*See* Transcript of Apr. 30, 2013 hrg. (D.I. 21)) ("Tr.")[5] Among the matters discussed were whether the Court should review a portion of the withheld documents *in camera* and, if so, which ones. (*See* Tr. at 14) After the parties further met and conferred, the government agreed to withdraw its request for 178 documents and requested that the Court conduct a review of a sample of 55 documents

---

[4]The Court's jurisdiction over this matter is not contested. (*See* D.I. 4 ¶ 1)

[5]The order proposed by the government and entered by the Court in scheduling the April 2013 hearing included a finding that "the file in this matter reflects a *prima facie* showing" of the factors the government must show in order to obtain enforcement of the summonses. (D.I. 2 ¶ 3) The Supreme Court set out the relevant four-part test in *United States v. Powell*, 379 U.S. 48, 57-58 (1964): the government must show that (1) the investigation will be conducted pursuant to a legitimate purpose; (2) the inquiry may be relevant to the purpose; (3) the information sought is not already within the government's possession; and (4) the administrative steps required by the Code have been followed. Taxpayer does not meaningfully dispute that the government has made out a *prima facie* case, so the burden to justify withholding the summonsed documents has shifted to Taxpayer. (*See* D.I. 11 at 6)

3

representative of the remaining 228 contested documents. (D.I. 16 at 2) The Court then ordered Taxpayer to submit the requested 55 documents for *in camera* review (D.I. 18), and on May 24, 2013 Taxpayer did so.

Following inspection of the 55 documents, this Court issued a Memorandum Order on October 25, 2013. (*See* D.I. 23) The Court made several findings, including a finding that Taxpayer had met its burden to show that it anticipated litigation as early as March 2006 (*id.* at 9), and that Taxpayer improperly withheld documents containing communications made to its testifying experts, XRoads and Duff & Phelps (*id.* at 13). The Court ordered the production of documents disclosed to testifying experts unless otherwise protected under Rule 26(b), and further ordered the parties to meet and confer to identify which documents still remained in dispute. (*Id.* at 14, 16-17)

By November 14, 2013, both parties indicated to the Court that 92 documents remained in dispute. (D.I. 25, 26) These disputed documents generally fall into two categories: (1) materials claimed as work-product from 2006 onwards, and (2) materials protected under the attorney-client and tax practitioner privileges. On November 22, 2013, the Court ordered Taxpayer to submit the remaining documents in dispute for *in camera* inspection and – given the variety of documents claimed protected under the attorney client and tax practitioner privileges[6] – allowed Taxpayer to accompany each document with a brief description of the privilege purportedly protecting each document in question. (D.I. 27) On December 6, 2013, Taxpayer

---

[6]Unlike the materials claimed protected as work-product (which applies almost exclusively to materials related to the WASCO transaction created from 2006 onwards), the documents claimed as privileged under the attorney-client and tax practitioner privileges pertain to a wide variety of subjects dating from 2001 onwards. (*See, e.g.*, Priv. Log No. 215 (containing draft amendment created by outside counsel in January 2001))

4

submitted the documents. On December 13, the parties notified the Court that no other documents remained in dispute. (D.I. 29, 30)

## LEGAL STANDARDS

### I.    Work-Product Doctrine

Federal Rule of Civil Procedure 26(b)(1) broadly provides: "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." The work-product exception to this disclosure requirement is set forth in Rule 26(b)(3)(A), which states: "Ordinarily, a party may not discover documents . . . that are prepared in anticipation of litigation or for trial by or for another party or its representative." This work-product doctrine functions to "promote[] the adversary system" by guarding the confidentiality of documents prepared in anticipation of litigation, allowing a party to prepare for litigation without fear that its work-product will be used against it. *See Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991); *see Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947).

The "burden of demonstrating that a document is protected as work-product rests with the party asserting the doctrine." *Conoco Inc. v. U.S. Dept. of Justice*, 687 F.2d 724, 730 (3d Cir. 1982). Hence, "[o]nly by looking to the state of the mind of the party preparing the document, or . . . the party ordering the preparation of the document[,]" *Martin v. Bally's Park Place Casino & Hotel*, 983 F.2d 1252, 1260 (3d Cir. 1993), can a court determine if a document comes within the scope of Rule 26(b)(3) protection. "[D]isclosure to a third party does not necessarily waive the protection of the work-product doctrine;" thus, in order to determine whether there has been a waiver of the work-product doctrine, courts must "distinguish between disclosures to adversaries and disclosures to non-adversaries." *Westinghouse Elec. Corp.*, 951 F.2d at 1428. "Under this

5

standard, the voluntary disclosure of attorney work-product to an adversary or a conduit to an

adversary waives work-product protection for that material." *United States v. Deloitte LLP*, 610

F.3d 129, 140 (D.C. Cir. 2010); *see also In re Chevron Corp.*, 633 F.3d 153, 165 (3d Cir. 2011)

("[I]t is only in cases in which the material is disclosed in a manner inconsistent with keeping it

from an adversary that the work-product doctrine is waived.").

## II.     Attorney-Expert Communications

Federal Rule of Civil Procedure 26(a)(2)(B)(ii) mandates the disclosure of all "facts or

data considered by" an expert witness who is retained or employed to provide expert testimony,

when the facts or data were considered by the expert "in forming" "opinions the witness will

express." *See also* Fed. R. Civ. P. 26(a)(2)(B)(i).  In 2010, Rule 26 was amended to "address

concerns about expert discovery," including by adding Rule 26(b)(4)(B) protecting drafts of

export reports required under Rule 26(a)(2)(C). *See* adv. comm. notes (2010).  Also added was

Rule 26(b)(4)(C), which "protect[s] communications between the party's attorney and any

[expert] witness required to provide a report under Rule 26(a)(2)(B)," with three exceptions into

which discovery is permitted: "communications [that] (i) relate to compensation for the expert's

study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert

considered in forming the opinions to be expressed; or (iii) identify assumptions that the party's

attorney provided and that the expert relied on in forming the opinions to be expressed."  The

advisory committee notes accompanying the 2010 amendments state: "The addition of Rule

26(b)(4)(C) is designed to protect counsel's work-product and ensure that lawyers may interact

with retained experts without fear of exposing these communications."

6

## III.    Attorney-Client and Tax Practitioner Privileges

The attorney-client privilege protects client and attorney communications related to

securing legal advice. *See Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 856 (3d

Cir. 1994). The privilege applies to communications from an attorney to a client as well as from

a client to its attorney. *See Upjohn v. United States*, 449 U.S. 383, 390 (1981). The attorney-

client privilege must be "strictly confined within the narrowest possible limits consistent with the

logic of its principle" because the "privilege obstructs the search for the truth and . . . its benefits

are, at best 'indirect and speculative.'" *In re Grand Jury Investigation*, 599 F.2d 1224, 1235 (3d

Cir. 1979) (internal citation omitted).

The burden of demonstrating the applicability of the attorney-client privilege thus rests on

the party asserting the privilege. *See Matter of Bevill, Bresler & Schulman Asset Mgmt. Corp.*,

805 F.2d 120, 126 (3d Cir. 1986) ("A party asserting a privilege bears the burden of proving the

applicability of the privilege"). Specifically, the party asserting privilege must show each of the

following:

> (1)    the asserted holder of the privilege is or sought to
> become a client;
>
> (2)    the person to whom the communication was made
> (a) is a member of the bar of a court, or his
> subordinate and (b) in connection with this
> communication is acting as a lawyer;
>
> (3)    the communication relates to a fact of which the
> attorney was informed (a) by his client (b) without
> the presence of strangers (c) for the purpose of
> securing primarily either (i) an opinion on law or
> (ii) legal services or (iii) assistance in some legal
> proceeding, and not (d) for the purpose of
> committing a crime or tort; and

7

> (4)    the privilege has been (a) claimed and (b) not
>        waived by the client.

*In re Grand Jury Investigation*, 599 F.2d at 1233 (internal quotation marks omitted).

The tax practitioner privilege, codified at 26 U.S.C. § 7525(a)(1), protects communications between a taxpayer and a "federally authorized tax practitioner" for the purpose of obtaining tax advice, "to the extent the communication would be considered a privileged communication if it were between a taxpayer and an attorney." *See generally Chao v. Koresko*, 2005 WL 2521886, at \*3 (3d Cir. Oct. 12, 2005) (recognizing tax practitioner privilege). Section 7525(a)(1) codifies the tax practitioner privilege as reflecting "the same common law protections of confidentiality which apply to a communication between a taxpayer and an attorney" and, thus, "the scope of the tax practitioner-client privilege depends on the scope of the common law protections of confidential attorney-client communications." *United States v. BDO Seidman*, 337 F.3d 802, 810 (7th Cir. 2003).

## DISCUSSION

## I.    Documents Claimed to be Work-Product

Taxpayer asserts work product protection with respect to roughly half of the 92 documents Taxpayer is withholding. Taxpayer contends that these documents were created in anticipation of litigation and are, therefore, protected under Rule 26(b)(3). The Court has reviewed each of these documents *in camera*. Broadly speaking, these materials fall into two categories: (A) draft reports of testifying experts; and (B) communications with testifying experts.

8

## A.    Draft Valuation Reports from XRoads and Duff & Phelps

Taxpayer claims that Privilege Log Nos. 275, 277, 280, 283-92, 315-17, and 342 are expert reports prepared by XRoads and Duff & Phelps[7] and, therefore, are protected work product. (*See* D.I. 17 at 3 n.8)  The parties dispute whether some of these documents – namely, those labeled as "draft valuation letters" and "draft valuation presentations" – qualify as draft "reports" within the meaning of Rule 26(b)(4). (*See* D.I. 25 at 3; D.I. 26 at 2)  Additionally, the government seeks production of any portions of these documents to the extent that they "may contain non-privileged materials." (D.I. 25 at 3)

### 1.    Draft reports: Privilege Log Nos. 275, 277, 315-17

Rule 26(b)(4)(B) extends work-product protection to "drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded." Several of the Privilege Log documents are just that. Privilege Log Nos. 275 and 277, authored by XRoads, and Nos. 315-17, authored by Duff & Phelps, are draft reports on the fair market value of WASCO, and come within the ambit of Rule 26(b)(4)'s protection. These documents were shared among employees of the testifying expert firms, Taxpayer, VE, outside counsel, and (for the Duff & Phelps reports) with outside tax advisors PricewaterhouseCoopers LLP ("PWC") As noted in the previous Memorandum Order, the Court is persuaded that "Taxpayer . . . had common interests with its parent and other affiliated entities" and there was no waiver of protection by virtue of these documents being shared among members of the VE corporate family. (D.I. 23 at 16)  In particular with regard to Nos. 315-17, the Duff & Phelps reports, the

---

[7] It is undisputed that XRoads and Duff & Phelps are testifying experts who must provide a written report as required by Rule 26(a)(2)(B). (D.I. 11 at 7; D.I. 12 at 2)

9

Court finds no waiver of privilege because PWC is not an adversary nor a conduit to an adversary. On the contrary, PWC was regularly consulted as a non-testifying expert. (*See* D.I. 7 ¶ 10; D.I. 5 at 3)

Accordingly, the Court finds that the Taxpayer has met its burden with regard to Privilege Log Nos. 275, 277, and 315-17. The Taxpayer will not be ordered to produce these documents to the government.

## 2. Draft valuation letters and presentations:
## Privilege Log Nos. 280, 283-92, 342

The Court also agrees with Taxpayer that Privilege Log Nos. 280, 283-292, and 342 are draft reports protected from disclosure as work product. (D.I. 17 at 3 n.8) Privilege Log No. 280 is described in the log as a "Draft Xroads valuation letter for Veolia Environment . . . ." Privilege Log Nos. 283-292 and 342 are characterized as "Draft Valuation Presentations . . . ."

Rule 26(b)(4)(B) protects "drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded." Here, the documents' contents reveal them to be draft reports, demonstrating counsel's collaborative interactions with expert consultants – notwithstanding the form these documents take. *See Republic of Ecuador v. For Issuance of a Subpoena Under 28 U.S.C. Sec. 1782(a)*, 735 F.3d 1179, 1187 (10th Cir. 2013).

Privilege Log Nos. 283-292 and 342 are labeled "draft valuation presentations" and, like Log No. 280, contain preliminary conclusions. The XRoads presentation includes summaries regarding WASCO's solvency and an outline. Privilege Log No. 342, the Duff & Phelps draft presentation, also contains summaries and conclusions regarding solvency, which reflect

counsel's collaborative interactions with expert consultants.[8]

Privilege Log No. 283 consists of a cover letter with a document attached to it; the remainder of the document, other than the cover letter, is identical to Privilege Log Nos. 284-92 (except that the attachment to No. 283 has handwritten notes on it). The cover letter is not referenced in the privilege log and Taxpayer will be required to produce it. Taxpayer properly withheld the remainder of No. 283.

## B.    Communications with the Testifying Experts

Taxpayer has withheld or redacted a number of materials containing communications with testifying experts XRoads and Duff & Phelps on the basis that these documents reflect or contain opinion work-product protected under Rule 26(b)(3) and do not otherwise fall under any of the exceptions listed in Rule 26(b)(4)(C)(i)-(iii). (*See* D.I. 12 at 3) These documents are: Privilege Log Nos. 82, 147, 351, 353, 355-56; materials produced in redacted form, i.e., Privilege Log Nos. R295-96, R311-12, R267, R297-303; and Redaction Log Nos. R18-19, R26.[9] These documents generally fall into two categories: (1) communications between counsel and the testifying experts; and (2) communications between non-attorney employees and the testifying experts.

---

[8]All of these documents were prepared after the time in which the Court previously found that Taxpayer anticipated litigation in March of 2006.

[9]The documents subsequently produced in redacted form are a combination of redacted documents produced to the IRS prior to commencement of this enforcement action (Redaction Log documents) and documents originally withheld which were produced in redacted form pursuant to the Court's prior Orders (D.I. 23; D.I. 27; *see also* D.I. 30). For the sake of clarity, documents produced in redacted form are signified by an "R" preceding the privilege or redaction log number.

### 1. Attorney–expert communications: Privilege Log Nos. 82, 351, R295-96

These documents contain communications between Taxpayer's counsel and the two testifying experts. Privilege Log No. 351 contains an email chain between Taxpayer, Taxpayer's Counsel, PWC, and Duff & Phelps. Log Nos. R295 and R296 contain redacted comments from Taxpayer's employees and outside counsel attached to an email sent to Xroads.

These documents are protected, as each contains attorney mental impressions and theories regarding the creation of the valuation report, and each comes within the scope of Rule 26(b)(4)(C)'s protection for an attorney's mental impressions when contained in a communication with a testifying expert.

Taxpayer has not met its burden, however, to show that Privilege Log No. 82 is protected.[10] This document consists of an email from Taxpayer's counsel at Cleary Gottlieb to XRoads which, by its own language, puts forth "facts" for XRoads' consideration in preparing its valuation letters. Accordingly, this document must be produced. *See* Fed. R. Civ. P. 26(b)(4)(C)(i)-(iii).

### 2. Non-attorney communications with testifying experts: Privilege Log Nos. 147, R267, R297-303, R311-12, 332, 353, 355-56; Redaction Log Nos. R18-19, R26

These documents contain communications made to testifying experts by either Taxpayer's non-attorney employees or its retained non-testifying experts. Taxpayer argues, and

---

[10]In addition to work-product protection, Taxpayer asserts attorney-client and tax practitioner privilege for this document. This document – an email between XRoads and the Taxpayer's counsel – is not a communication to or from a client and falls outside the scope of these privileges. *See In re Grand Jury Investigation*, 599 F.2d at 1233.

the Court has found, that many of the materials created by Taxpayer and its non-testifying experts were prepared in anticipation of litigation as early as March 2006. (D.I. 23 at 9) However, the government contends that even if many of these documents are privileged, Taxpayer has waived the privilege. (D.I. 11 at 12-13)

After inspection, the Court concludes that Taxpayer waived work-product protection with respect to these disputed documents. Taxpayer predicates its argument on the theory that Rule 26(b)(3)(B) broadly protects from disclosure communications with testifying experts unless they come within one of the exceptions delineated in Rule 26(b)(4)(C) relating to compensation, facts or data, or assumptions relied upon by the expert. (*See, e.g.*, D.I. 28 at 1-2 ("[P]ortions of these . . . documents . . . are protected as opinion work-product under the work-product doctrine because they . . . did not convey facts to XRoads, but consisted only of further discussion of the relevance of certain facts."))

This misapprehends the scope of Rule 26(b)(4)(C)'s protection, which extends only to communications between a party's attorney and a testifying expert. Rule 26(b)(4)(C) does not erase the general rule that work-product protection is waived when material is disclosed to a testifying expert. *See In re Chevron*, 633 F.3d at 165. Several recent appellate court decisions have held that the post-2010 version of Rule 26(b)(4) is narrow in scope. *See Republic of Ecuador v. Mackay*, 742 F.3d at 871 (9th Cir. 2014) (holding that Rule 26(b)(4) does not provide presumptive protection for all testifying expert materials as trial preparation materials); *Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1195 (11th Cir. 2013) (work-product protection only extends to core work-product of attorney). Other courts addressing the issue of whether the work-product doctrine extends to communications between a non-attorney or agent and the

testifying expert have concluded that it does not. *See Fialkowski v. Perry*, 2012 WL 2527020, at *4 (E.D. Pa. June 29, 2012) (emphasizing Rule 26(b)(4)(C) is designed to protect just counsel's communications with expert); *In re Application of Republic of Ecuador*, 280 F.R.D. 506, 514-16 (N.D. Cal. 2012) (stating Rule 26(b)(4)(C) does not protect communications between non-attorney employees of corporation and its expert witness, nor those between testifying and non-testifying experts).

The Courts finds these cases instructive. By enlisting XRoads and Duff & Phelps as expert witnesses in its litigation with the IRS, Taxpayer has placed them "in a position to serve as a conduit to transmit" either these documents "or at least [their] conclusions" to the IRS; the reason Taxpayer is submitting documents to these experts is the hope that the experts will agree with their content, incorporate them into an expert report, and thereby provide Taxpayer an opportunity to persuade the IRS to agree with Taxpayer's position. *See In re Chevron*, 633 F.3d at 165. Consequently, the documents submitted to the testifying experts here lose their work-product protection, unless the protection is otherwise preserved by Rule 26(b)(4)(C).

Accordingly, Taxpayer must disclose Privilege Log Nos. 147, R267, R297-303, R311-12, 353, 355-56, and Redaction Log Nos. R18-19, R26, which comprise either communications between non-attorney employees of Taxpayer and the testifying experts (*see, e.g.*, Priv. Log No. 147) or communications between testifying experts and the consulting experts (*see, e.g.*, Priv. Log. Nos. R297-303; Red. Log No. R26).

## II. Attorney-Client and Tax Practitioner Privileges

The government argues that Taxpayer has not established that either the attorney-client privilege or tax practitioner privilege applies to many of the documents, or, alternatively, that

14

such a privilege was waived. (D.I. 11 at 12-13) Taxpayer has the burden to show that the attorney-client or tax practitioner privilege applies, and the Court must apply these privileges narrowly. *See In re Grand Jury Investigation*, 599 F.2d at 1235.

Again, the Court divides these materials into two general categories: (A) communications with attorneys or tax practitioners; and (B) internal documents Taxpayer claims reflect legal or tax advice.

## A.     Communications with Attorneys or Tax Practitioners

Many of the documents before the Court directly involve attorneys or tax practitioners. For the attorney-client privilege to attach to a document, the Court must be satisfied that it is: "(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." *In re Chevron*, 650 F.3d 276, 289 (3d Cir. 2011) (internal quotation omitted). Similarly, "the same common law protections of confidentiality which apply to a communication between a taxpayer and an attorney . . . apply to a communication between a taxpayer and any federally authorized tax practitioner to the extent the communication would be considered a privileged communication if it were between a taxpayer and an attorney." 26 § U.S.C. 7525(a)(1); *see also Seidman*, 337 F.3d at 810; *see generally Chao*, 2005 WL 2521886 (3d Cir. Oct. 12, 2005) (recognizing tax practitioner privilege).

## 1.     Legal Memoranda: Privilege Log Nos. 122, 148, 149, 158, 206, 208

These withheld materials consist of legal memoranda from outside counsel or in-house counsel addressing various issues from at least 1999 onwards. The Court concludes that these documents were properly withheld on the basis of the attorney-client privilege. Each is a

15

communication transmitted among privileged persons, the client from outside counsel (Priv. Log Nos. 148-49, 158, 206, 208) or among in-house counsel (Priv. Log No. 122). Furthermore, as memoranda analyzing legal implications of certain corporate transactions, these documents were made for the purpose of dispensing legal advice and were kept in confidence. *See Sampson v. Sch. Dist. of Lancaster*, 262 F.R.D. 469, 477 (E.D. Pa. 2008) (finding legal memorandum protected under attorney client privilege). Stripping these documents of their privileged status would run contrary to the principle of "foster[ing] disclosure and communication between the attorney and the client." *Upjohn Co.*, 449 U.S. at 389.

The Court finds that the privilege attaching to these documents has not been waived. The presence of a third party does not waive the attorney-client privilege if that presence is "essential to and in furtherance of the communication." *In re Grand Jury Investigations*, 918 F.2d 374, 384 (3d Cir. 1990). To the extent that these documents were shared within the corporate family, such as those sent to or from VE, such involvement was essential to and in furtherance of the communications with the attorneys involved.

Accordingly, these documents were properly withheld.

## 2. Draft materials of attorneys/tax practitioners: Privilege Log Nos. 220, 246, 250, 254, 256, R215-219

These documents all consist of draft materials prepared by or with Taxpayer's outside counsel. Privilege Log Nos. 220, 254, and 256 are drafts of agreements or contracts prepared by outside counsel and sent to Taxpayer, and are protected under the attorney-client privilege. *See Andritz Sprout-Bauer, Inc. v. Beazer E., Inc.*, 174 F.R.D. 609, 633 (M.D. Pa. 1997) ("Preliminary drafts of contracts are generally protected by attorney-client privilege, since [they] may reflect not only client confidences, but also legal advice and opinions of attorneys, all of which is

16

protected by the attorney/client privilege.") (internal quotation omitted; alteration in original).

Privilege Log Nos. 246 and 250 similarly reflect attorney advice to Taxpayer in handling the

WASCO transaction and, like the draft contracts, their production would necessarily disclose

confidential advice dispensed by outside counsel. The Court concludes that these materials may

be withheld under the attorney-client privilege.

Although Privilege Log Nos. R215-19 also contain drafts of agreements prepared by

outside counsel, an inspection of these documents reveals that the attorney-client privilege has

been waived. The privilege log notes that these draft agreements, originally created in August

2000, were attached to an email from Elissa Moskowitz seven years later. Taxpayer has not

shown why the involvement of Ms. Moskowitz, an employee of PWC, was essential or in

furtherance of the communication. The gap in time suggests otherwise. These documents must

be disclosed in their entirety.

### 3. Communications with attorneys or tax practitioners: Privilege Log Nos. 150, 154, 177, 201, 205, 252, 253; Redaction Log Nos. R32-R37

Before the Court are also numerous communications with attorneys and/or tax

practitioners covering a wide variety of topics and issues relating to proposed transactions,

including the WASCO transaction. Specifically, Privilege Log Nos. 150, 154, 177, and 205 are

communications made with tax practitioners, and Privilege Log Nos. 252, 253, and Redaction

Log Nos. R32-37[11] are communications with Taxpayer's outside counsel. After an inspection of

these documents, the Court concludes that Taxpayer has met its burden and established the

---

[11] Taxpayer also asserts protection as work-product for Redaction Log Nos. R32-37, an issue the Court need not decide.

17

claimed privilege. The documents for which Taxpayer claims the tax practitioner privilege either

dispense tax planning advice in relation to different transactions (Priv. Log Nos. 154 and 205) or

are necessary in order to obtain such tax planning advice and directly seek such advice (Priv. Log

Nos. 150, 177).

Similarly, Privilege Log No. 252 directly solicits advice from outside counsel, while Log

Nos. 253 and Redaction Log Nos. R32-37 provide legal advice and discuss this information with

the client. Finally, Privilege Log No. 201, an email from outside counsel concerning an

upcoming meeting, contains information necessary for Taxpayer to obtain legal advice relating to

tax and business transactions in the form of agenda topics for a future meeting. These documents

were properly withheld as privileged.

### B.    Internal Documents

Taxpayer withholds many documents not involving any attorney or tax practitioner,

arguing that the privileges nonetheless cover "internal communications in which the client

reports or discusses counsel's advice." (D.I. 5 at 8) Even where an attorney is not the author or a

recipient, a document may nonetheless be protected if it "reflect[s] confidential communications

between client and counsel . . . for the purpose of either (1) providing legal services or

(2) providing information to counsel to secure legal services." *SmithKline Beecham Corp. v.*

*Apotex Corp.*, 232 F.R.D. 467, 477 (E.D. Pa. 2005) (citing *Cuno, Inc. v. Pall Corp.*, 121 F.R.D.

198, 202 (E.D.N.Y. 1988)); *see also Schwarz Pharma., Inc. v. Teva Pharm. USA, Inc.*, 2007 WL

2892744, at *3 (D.N.J. Sept. 27, 2007) (stating that intra-corporate documents may be privileged

where there is "some nexus between the privileged communication and a specific attorney.").

## 1. Protected documents: Privilege Log Nos. 161, 195, 209, 245, 247

Taxpayer has met its burden with respect to Privilege Log Nos. 161, 195, 245, and 247. *In camera* inspection reveals that these documents are related to other privileged documents, such as Privilege Log Nos. 245 and 247,[12] or explicitly reference advice sought from outside counsel, as in Privilege Log Nos. 161 and 195. These documents were properly withheld on the basis of privilege. Although Privilege Log No. 209 is not protected by the attorney-client or tax practitioner privilege, the content of this document makes clear that it was properly withheld as work-product.

## 2. Unprotected documents: Privilege Log Nos. 151, 152, 164-65, 171, 173-76, 178, 181-82, 196 pg. 5, 197-98, 224-25, 244; Redaction Log No. R41

The party withholding a document on the basis of privilege is tasked with "describ[ing] the nature of the documents . . . in a manner that . . . will enable other parties to assess the applicability of the privilege or protection." Fed. R. Civ. P. 26(b)(5). "Where descriptions in the privilege log fail to meet this standard, then disclosure is an appropriate sanction." *SmithKline*, 232 F.R.D. at 475 (internal quotation omitted). The Court concludes that the privilege log descriptions do not support the Taxpayer's assertions of privilege with respect to the documents listed discussed in this section.

Many of the descriptions, for example, do not indicate an author and/or recipient, and the privilege log further provides no clue as to why they were created. (*See, e.g.*, Priv. Log Nos. 164, 173, 196 pg. 5; *see also SmithKline*, 232 F.R.D. at 476 ("We . . . scrutinize closely any privilege

---

[12]Privilege Log No. 247 is a large file containing numerous materials. To the extent that these materials are not strictly intra-corporate communications, they are nonetheless protected as direct and confidential communications with attorneys.

claim where [the party asserting the privilege] is unable to identify the author or has provided only a general group-wide description for the recipients.")) Some documents, which appear to be legal memoranda or tax memoranda (*see, e.g.*, Priv. Log Nos. 197-98; Red. Log No. R41), are addressed so broadly – generally to the entire corporation – as to render the Court unable to determine whether the asserted privilege was waived, and thus must be produced. *See SmithKline Beecham Corp. v. Apotex Corp.*, 2000 WL 1310669, at *7 (N.D. Ill. Sept. 13, 2000) ("It was not unreasonable for the magistrate judge to have difficulty determining, from a general description like 'management,' whether a document had been too broadly distributed to seriously allow a claim of confidentiality.").

## CONCLUSION

In accordance with the reasoning set forth above, the Taxpayer must disclose the documents identified as improperly withheld. An appropriate order follows.